## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RYAN MEHL,                    :
       **Plaintiff**          :
                      :          **No. 1:20-cv-1173**
      **v.**              :
                      :          **(Judge Rambo)**
SMITH, <u>et</u> <u>al.</u>,              :
       **Defendants**         :

## <u>MEMORANDUM</u>

Presently before the Court are the parties' cross-motions for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. Nos. 75, 89.) The motions have been briefed and are ripe for the Court's disposition. For the reasons that are set forth below, the Court will deny Plaintiff's motion and grant Defendants' motion.

## I.     BACKGROUND

Plaintiff Ryan Mehl ("Plaintiff"), who is proceeding <u>pro se</u>, is currently incarcerated at State Correctional Institution Forest in Marienville, Pennsylvania. He has brought this civil rights action pursuant to 42 U.S.C. § 1983, regarding events that purportedly occurred at State Correctional Institution Smithfield in Huntingdon, Pennsylvania ("SCI Smithfield"), where he was previously incarcerated. (Doc. No. 1.)

In his complaint, Plaintiff asserts violations of his constitutional rights under the First, Eighth, and Fourteenth Amendments, as well as a state law claim for

intentional infliction of emotional distress.  (Id.)  As for relief, he seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (Id.)

Named as Defendants are the following individuals, all of whom are employees at SCI Smithfield: Corrections Lieutenant Smith ("Smith"); Corrections Security Captain Eichenlaub ("Eichenlaub");[1] and Corrections Officers John Doe 1 and John Doe 2.  (Id. ¶¶ 4-7.)  John Doe 1 and 2 have been identified by Plaintiff as R.E. Miller ("Miller") (Doc. No. 60 at 1) and Prichard (Doc. No. 24 at 1).[2] Plaintiff raises the following allegations against Defendants.

On October 22, 2019, Plaintiff was handcuffed, but "sitting peacefully[,]" in the TV room located on the FA Block at SCI Smithfield when Defendant Smith ordered John Doe 1 (i.e., Defendant Miller) to spray Plaintiff with oleoresin capsicum ("OC") spray.  (Doc. No. 1 ¶¶ 8, 9.)  Plaintiff was "forcefully dragged" from the FA Block to the medical department, which was located "hundreds of yards away."  (Id. ¶ 10.)  Plaintiff was then placed in solitary confinement.  (Id. ¶¶ 12, 13.)

---

[1]  The Court has taken the spelling of "Eichenlaub" from Defendants' briefing. (Doc. No. 91.)

[2]  The Court will collectively refer to Smith, Eichenlaub, Miller, and Prichard as "Defendants."

Plaintiff was subsequently brought before a hearing examiner for a misconduct hearing at which he was deprived of his right to a full and fair hearing. (Id. ¶ 15.)  More specifically, Plaintiff could not conduct his own investigation to gather facts in support of his innocence, nor could he perform cross examination. (Id. ¶ 16.)  In addition, the hearing examiner was not fair and impartial (id. ¶ 17), and John Doe 2 (i.e., Defendant Prichard) had "forcefully yanked" Plaintiff from the hearing room while Plaintiff was still attempting to present matters to the hearing examiner (id. ¶ 20).  As a result of the misconduct hearing, the hearing examiner issued Plaintiff sixty (60) days in disciplinary custody.  (Id. ¶ 18.)[3]

Following the misconduct hearing, Plaintiff continued to assert his innocence, and he also attempted to pursue the "misconduct appeal process." (Id. ¶ 21.)  However, he was "obstruct[ed]" from doing so because he was "deni[ed] or delay[ed]" the requisite appeal forms and, additionally, his outgoing mail was not placed in the mailbox.  (Id.)

---

[3]  Although the complaint contains allegations regarding the hearing examiner's conduct, Plaintiff has neither named the hearing examiner as a defendant in this litigation, nor asserted any claims against this individual.  (Doc. No. 1.)  As a result, the allegations regarding the hearing examiner's conduct are not at issue in this litigation.  See, e.g., Gonzales v. Pennsylvania, 293 F. App'x 136, 139 n.2 (3d Cir. 2008) (noting that a non-party's conduct was "not at issue because [the non-party] ha[d] not been named as a Defendant").

In connection with all of these allegations, Plaintiff asserts the following claims: First Amendment freedom of assembly and freedom of speech claims,[4] an Eighth Amendment excessive use of force claim, and a state law claim for intentional infliction of emotional distress against Defendants Miller and Smith based on the alleged events of October 22, 2019 (id. ¶¶ 6, 8-9, 23-24); a Fourteenth Amendment procedural due process claim against Defendant Prichard for "forcefully" removing Plaintiff from the misconduct hearing, while Plaintiff was still attempting to present matters to the hearing examiner (id. ¶¶ 19-20, 25); and, finally, a supervisory liability claim against Defendant Eichenlaub on the basis that he failed to properly "supervise or train" his subordinates, which resulted in violations of Plaintiff's constitutional rights (id. ¶ 26).

On November 17, 2021, Defendants filed an answer to Plaintiff's complaint (Doc. No. 67.)  The following day, the Court directed the parties to complete discovery by December 30, 2021, and to file any dipositive motions on or before January 31, 2022.  (Doc. No. 72.)  Consistent with that directive, Plaintiff filed a motion for partial summary judgment on December 14, 2021 (Doc. No. 75), and

---

[4] The Court liberally construes Plaintiff's complaint as including a First Amendment freedom of assembly claim and a First Amendment freedom of speech claim.  For ease of reference, the Court will simply refer to these claims as Plaintiff's First Amendment free assembly/speech claims.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (explaining that pro se pleadings are held to "less stringent standards" than pleadings drafted by lawyers (citation and internal quotation marks omitted)).

Defendants filed a collective motion for summary judgment on January 31, 2022 (Doc. No. 89). As reflected by the Court's docket, those motions have been briefed by the parties and are now ripe for the Court's disposition.

## II.   LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). And, a disputed material fact is "genuine . . . [i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" See Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991) (citing Anderson, 477 U.S. at 248).

A party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party's burden "may be discharged by 'showing'—that is, pointing out to the district

court—that there is an absence of evidence to support the nonmoving party's case." See id. at 325.

Once the moving party has met its initial burden, the burden shifts to the nonmoving party, who may not rest upon the unsubstantiated allegations or denials of its pleadings and, instead, must go beyond its pleadings, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to show a genuine dispute of material fact. See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial[,]" summary judgment is proper. See id. at 322. Summary judgment is also proper if the nonmoving party provides evidence that is "merely colorable" or that "is not significantly probative[.]" See Gray, 957 F.2d at 1078.

In addition, when deciding a motion for summary judgment, "the court must view all evidence and draw all inferences in the light most favorable to the non-moving party[.]" See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008) (citing Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3d Cir. 2006)); M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 125 (3d

Cir. 2020) (stating that, when reviewing a motion for summary judgment, courts are to "view the evidence in the light most favorable to the non-moving party").

The legal standard "is no different where there are cross-motions for summary judgment." See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008); Advanced Fluid Sys., Inc. v. Huber, 958 F.3d 168, 173 n.2 (3d Cir. 2020) (reiterating the same).

## III. DISCUSSION

The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Doc. Nos. 75, 89.)  For the reasons that are discussed below, the Court will grant Defendants' motion and deny Plaintiff's motion.  The Court begins its discussion with Defendants' motion.

### A.    Statement of Material Facts[5]

The material facts, as culled from the parties' respective statements (Doc. Nos. 90, 98), are as follows.  On October 22, 2019, Plaintiff actively, repeatedly,

---

[5]  Under the Court's Local Rules, a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." See M.D. Pa. L.R. 56.1.  Further, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in [the moving party's statement], as to which [the non-moving party] contend[s] that there exists a genuine issue to be tried."  (Id.)  In accordance with this Local Rule, the parties filed their respective statements. (Doc. Nos. 90, 98.)

and continuously refused to abide by multiple orders given by correctional officers to stand and be escorted to the Restricted Housing Unit ("RHU"). (Doc. Nos. 90 ¶ 2, 98 ¶ 2.)  Correctional officers ordered Plaintiff to stand and be escorted to the RHU multiple times, to which Plaintiff verbally and clearly refused to comply. (Doc. Nos. 90 ¶ 3, 98 ¶ 3.)  Correctional officers communicated to Plaintiff that if he did not comply with orders, OC spray would be deployed against him to gain his compliance with the orders.  (Doc. Nos. 90 ¶ 4, 98 ¶ 4.)

Plaintiff, however, continued to disregard orders and, as previously warned, the correctional officers deployed OC spray against Plaintiff to gain his compliance.  (Doc. Nos. 90 ¶ 5, 98 ¶ 5.)  Plaintiff then complied with orders, he stood, and he allowed himself to be escorted to the RHU.  (Doc. Nos. 90 ¶ 6, 98 ¶ 6.)  Plaintiff received medical care via decontamination procedures for the OC spray exposure.  (Doc. Nos. 90 ¶ 7, 98 ¶ 7.)

Defendants contend, and point to supporting evidence in the record, that Plaintiff filed fourteen (14) inmate grievances between October 2019 and December 2019.  (Doc. No. 90 ¶ 8.)  Defendants also contend that none of these fourteen (14) grievances relate to the events that allegedly occurred on October 22,

2019, or—for that matter—to any of the Defendants in this litigation.  (Doc. No. 90 ¶ 10.)[6]

Plaintiff does not dispute Defendants' assertion that none of these fourteen (14) grievances relate to the alleged events of October 22, 2019.  Instead, Plaintiff alleges that he filed "more than fourteen [14] inmate grievances between October 2019 and December 2019" (Doc. No. 98 ¶ 8), that he "did in fact file a grievance related to the events on October 2[2], 2019" (Doc. No. 98 ¶ 10), and that he "fully exhaust[ed] the available inmate grievance procedure for this matter" (Doc. No. 98 ¶ 11).  In support of his allegations, Plaintiff submits the  declarations of Nelson Rivera ("Rivera") and Clinton Hitner ("Hitner"), two (2) inmates who allegedly witnessed SCI Smithfield prison staff thwarting Plaintiff's ability to file inmate grievances and pursue subsequent appeals.  (Id. at 3-4 (containing Rivera's declaration), 5 (containing Hitner's declaration).)

### B.     Personal Involvement

Defendants initially argue that Defendant Eichenlaub should be dismissed from this litigation due to his lack of personal involvement in any of the alleged constitutional violations.  (Doc. No. 91 at 11-15.)  In support, Defendants allege that the complaint is devoid of any factual allegations that Defendant Eichenlaub

---

[6]  Defendants do not address whether any of these grievances relate to the events that allegedly occurred during Plaintiff's misconduct hearing.

acted with or had knowledge of the alleged actions of Defendants Miller, Smith, or Prichard.  (Id. at 13.)  Instead, Defendants allege, Plaintiff has only asserted Defendant Eichenlaub's supervisory position and set forth conclusory allegations that he failed to train and supervise his subordinates.  (Id.)  Defendants contend, however, that Defendant Eichenlaub's personal involvement in the alleged constitutional violations cannot be based upon a theory of respondent superior.  (Id. at 14.)  The Court agrees.

Under 42 U.S.C. § 1983, individual liability may be imposed only if the state actor played an affirmative part in the alleged misconduct.  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  "[L]iability cannot be predicated solely on the operation of respondeat superior."  Id.  In other words, a defendant "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence[.]"  See Atkinson v. Taylor, 316 F.3d 257, 270 (3d Cir. 2003) (quoting Rode, 845 F.2d at 1207).

With respect to supervisory liability, there are two theories: "one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused [the] constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of

and acquiesced in [their] subordinates' violations."  See Santiago v. Warminster

Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010) (citation and internal quotation marks

omitted) (alterations in original); accord Parkell v. Danberg, 833 F.3d 313, 330 (3d

Cir. 2016) (recognizing these "'two theories of supervisory liability'" (quoting

Santiago, 629 F.3d at 19 n.5)).

In the instant matter, Plaintiff's complaint alleges the following allegations

with respect to Defendant Eichenlaub:

> Defendant Captain Eichenlab [sic] is a correctional security captain
> employed at SCI[ ]Smithfield.  He is responsible for the supervision
> and training of all officers assigned to the security office at SCI[
> ]Smithfield.  He is sued in his individual capacity.

* * *

> The actions/inactions of Defendant Captain Eichenlab [sic] in failing
> to properly supervise or train employees under his supervision
> caused the physical and emotional sufferings the Plaintiff was forced
> to endore [sic] again in violation of the First, Eighth, and Fourteenth
> Amendments of the U.S. Constitution.

* * *

> Defendant Captain Eichenlab's [sic] failure to train [and/or]
> supervise his employee's [sic] resulted in both damage to Plaintiff's
> vision, as well as exposing the Plaintiff to undue deprivation
> to his constitutional freedoms. Being his the [sic] Defendants[']
> actions/inactions resulted in excessive use of force where his
> employees should have known only constituted a minimal amount of
> force if any at all.

(Doc. No. 1 ¶¶ 7, 26, A.2.)

The Court finds that Plaintiff has not alleged in the complaint, much less demonstrated to the Court by pointing to evidence in the summary judgment record, that Defendant Eichenlaub had any personal involvement in the alleged wrongdoing.  Indeed, Plaintiff has not shown that Defendant Eichenlaub established and maintained a policy, practice, or custom that directly caused the alleged constitutional harms, nor has he shown that Defendant Eichenlaub participated in the violation of Plaintiff's rights, directed others to violate them or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.  Instead, Plaintiff has only asserted conclusory allegations that Defendant Eichenlaub failed to train or supervise his subordinates.  Thus, for all of these reasons, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's supervisory liability claim against Defendant Eichenlaub.

### C.      Exhaustion of Administrative Remedies

Next, Defendants argue that Plaintiff did not exhaust his claims under the Prison Litigation Reform Act ("PLRA") before filing this lawsuit.  (Doc. No. 91 at 15-18.)  Under the PLRA's exhaustion requirement, "'[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'"  See Paladino v. Newsome, 885 F.3d 203, 207 (3d Cir. 2018) (quoting 42 U.S.C. § 1997e(a)) (alterations in original).

12

Thus, exhaustion of available administrative remedies is a prerequisite for a prisoner bringing suit under § 1983 regrading prison conditions.  See Ross v. Blake, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006))); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)).

In addition, "[t]he PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'"  See Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (quoting Woodford, 548 U.S. at 88).  These procedural rules are supplied by the relevant state prison grievance system.  See Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004).  A prisoner's failure to follow these procedural rules will result in a procedural default of the claims, thereby barring the prisoner from bringing suit in federal court.  See id. at 227-32; Scott v. CO Smoke, No. 3:19-CV-1387, 2019 WL 7163465, at *2 (M.D. Pa. Dec. 20, 2019) (stating that prisoners "who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named

defendants, are barred from subsequently litigating claims in federal court" (citing Spruill, 372 F.3d 218)).

There is, however, an exception to the PLRA's mandatory exhaustion requirement—a prisoner "'need not exhaust'" unavailable administrative remedies. See Downey, 968 F.3d at 305 (quoting Ross, 578 U.S. at 636).  "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  See id. (quoting Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)).  Thus, "[j]ust as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies."  See id. (citing Shifflett, 934 F.3d at 367).

Here, Defendants argue that Plaintiff failed to comply with the DOC's inmate grievance procedure because he did not file, or subsequently appeal, any grievances concerning the claims in his complaint.  (Doc. No. 91 at 17.)  In response, however, Plaintiff contends that he should be deemed to have exhausted his administrative remedies (Doc. No. 98 ¶¶ 10, 11) because they were not available to him as a result of prison staff's interference (Doc. No. 99 at 2).  In support, Plaintiff has submitted the declarations of his fellow inmates, Rivera and

Hitner, who declare under the penalty of perjury, that they lived with or near Plaintiff in the RHU at SCI Smithfield and, thus, witnessed staff's alleged interference. (Doc. No. 98 at 3-5.)

More specifically, Rivera states that, from May through September of 2020, and from the end of September through November 23, 2021, he was either housed in the RHU with a clear view to Plaintiff's cell or he lived with Plaintiff in the same cell. (Id. at 3.) Rivera states that, during these periods of time, he witnessed prison staff deny Plaintiff grievance paperwork and impede Plaintiff's efforts to file and subsequently appeal his grievances.[7] (Id.)

In addition, Hitner similarly declares, under the penalty of perjury, that he was housed in the RHU at SCI Smithfield. (Id. at 5.) Unlike Rivera, he does not identify the specific period or periods of time in which he was housed there. Nevertheless, he states that, while he was incarcerated there, he witnessed prison staff impede Plaintiff's ability to file grievances. (Id.)

Defendants have filed a response to these declarations, arguing that it was impossible for these two (2) inmates to have witnessed any alleged interference on the part of prison staff because Rivera was incarcerated at an entirely separate facility and Hitner was confined to a separate section of SCI Smithfield, during the

---

[7] Notably, these periods of time in which Rivera was allegedly confined to the RHU at SCI Smithfield occurred well after the October 2019 incident in question.

relevant period of time in which Plaintiff would have had to file his grievances concerning the alleged events of October 22, 2019, as well as the alleged events of his misconduct hearing.  (Doc. No. 91 at 17; Doc. No. 100 at 5.)   Although Defendants identify this relevant period of time as October to December 2019, they do not provide any analysis in support.  (Id.)  Instead, they broadly cite to DC-ADM 804, which sets forth the DOC's policy pertaining to the inmate grievance system, and to McLean v. Harry, 2020 WL 375742, at *2 (M.D. Pa. Jan. 23, 2020), a case from the Middle District of Pennsylvania, which generally discusses that policy.  (Doc. No. 100 at 5.)

Under DC-ADM 804, a prisoner can "seek resolution of problems or other issues of concern arising during the course of confinement."  Pa. Dep't. of Corr., DC-ADM 804.  More specifically, an inmate may, after attempting to resolve the problems or issues informally, file an initial grievance with the facility grievance coordinator within fifteen (15) workings day of the complained-of-events.  (Id.)  If the prisoner is not satisfied with the response to his initial grievance, he may appeal that decision to the facility manager within fifteen (15) working days of the date of the response.  (Id.)  If that appeal is denied, the prisoner may then file a final appeal to the Secretary's Office of Inmate Grievances and Appeals within fifteen (15) working days of the date of the facility manager's decision.  (Id.)

In the instant matter, Plaintiff asserts the following claims: a First Amendment free assembly/speech claim, an Eighth Amendment excessive use of force claim, and a state law intentional infliction of emotional distress claim against Defendants Miller and Smith on the basis of the October 22, 2019 events; and a Fourteenth Amendment procedural due process claim against Defendant Prichard for "forcefully" removing Plaintiff from his disciplinary hearing, while Plaintiff was still attempting to present maters to the hearing examiner.[8]  The Court will address these claims below.

### 1.    Claims against Defendants Miller and Smith

With respect to Plaintiff's First Amendment free assembly/speech claims, Eighth Amendment excessive use of force claim, and state law intentional infliction of emotional distress claim against Defendants Miller and Smith based upon the alleged events of October 22, 2019, the Court finds that these claims plainly implicate DC-ADM 804, because they relate to "issues of concern arising during the course of confinement."  Pa. Dep't of Corr., No. DC-ADM 804. Accordingly, because these claims implicate DC-ADM 804, the Court must determine whether Plaintiff exhausted his administrative remedies under this policy.

---

[8]  As discussed above, the supervisory liability claim against Defendant Eichenlaub has been dismissed from this litigation due to his lack of personal involvement in the alleged constitutional violations.

To do so, the Court must first consider whether Plaintiff filed an initial grievance within fifteen (15) working days of the complained-of-events. (Id.) According to Plaintiff's complaint, the complained-of-events occurred on October 22, 2019. (Doc. No. 1 ¶ 8.) Thus, Plaintiff had fifteen (15) working days, or until November 13, 2019, to file his initial inmate grievance with the facility grievance coordinator for initial review.

The summary judgment record reveals, however, that Plaintiff did not file an initial grievance, pertaining to the aforementioned claims against Defendants Miller and Smith, either on or before November 13, 2019. (Doc. Nos. 90-1 through 90-14, 100-4.) The summary judgment record further reveals that neither Rivera nor Hitner were housed at SCI Smithfield's RHU during this fifteen (15) day period of time in which Plaintiff was required to file his initial grievance. (Doc. No. 100-1 at 2; Doc. No. 100-2 at 2-4.) Finally, contrary to Plaintiff's assertions that the administrative remedies were unavailable to him, the summary judgment record reveals that he was able to file five (5) grievances during this fifteen (15) day period. (Doc. No. 90-1 at 2.) And, in fact, one of those grievances specifically complains about unrelated events that allegedly occurred on October 22, 2019. (Doc. No. 90-2 at 6.)

Thus, for all of these reasons, the Court finds that Defendants have satisfied their initial summary judgment burden by demonstrating the absence of a genuine

dispute of material fact.  The Court further finds that, once the burden shifted to

Plaintiff, he did not point to a genuine dispute of material fact.  Consequently, the

Court will grant Defendants' motion for summary judgment with respect to

Plaintiff's First Amendment free assembly/speech claim, Eighth Amendment

excessive use of force claim, and state law intentional infliction of emotional

distress claim against Defendants Miller and Smith based upon the alleged events

of October 22, 2019.

Furthermore, in light of this ruling, the Court will deny Plaintiff's motion for

partial summary judgment.  (Doc. No. 75.)  In his motion, supporting

documentation, and related briefing (Doc. Nos. 76, 77, 80, 81, 96, 97), Plaintiff

requests the Court to grant him summary judgment with respect to his Eighth

Amendment excessive use of force claim against Defendants Miller and Smith.

Because the Court has found that Plaintiff did not exhaust his administrative

remedies with respect to this claim, he is not entitled to summary judgment.

## 2. Claims against Defendant Prichard

Thus, the only remaining claim before the Court is Plaintiff's Fourteenth

Amendment procedural due process claim against Defendant Prichard for

"forcefully" removing Plaintiff from his disciplinary hearing, while Plaintiff was

still attempting to present matters to the hearing examiner.  (Doc. No. 1 ¶¶ 20, 25.)

Unlike Defendants' exhaustion arguments above, however, the Court finds that

Defendants have not met their initial summary judgment burden in showing that there is an absence of a genuine dispute of material fact as to whether Plaintiff failed to exhaust this claim.

As a threshold matter, Defendants have not addressed why Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Prichard implicates DC-ADM 804, as opposed to DC-ADM 801 or DC-ADM 802.  This is particularly relevant considering the fact that DC-ADM 804 explicitly provides as follows: "Issues concerning a specific inmate misconduct charge, conduct of hearing, statements written within a misconduct and/or other reports, a specific disciplinary sanction, and/or the reasons for placement in administrative custody will not be addressed through the Inmate Grievance System [(i.e., DC-ADM 804)] and must be addressed through . . . DC-ADM 801, "Inmate Discipline" and/or DC-ADM 802, "Administrative Custody Procedures."  Pa. Dep't of Corr., No. DC-ADM 804 (emphasis omitted); see also Powell v. McKeown, No. 1:20-CV-348, 2020 WL 4530727, at *14 (M.D. Pa. Aug. 6, 2020)) (stating that "DC-801 sets forth procedures regarding inmate discipline and misconduct hearings . . . [and that]  DC-802 sets forth procedures regarding an inmate's placement in administrative custody").

In addition, even if the Court were to assume that Plaintiff's Fourteenth Amendment procedural due process claim implicates DC-ADM 804, the Court

would still find that Defendants have not met their burden with respect to this claim.  Specifically, the Court finds that Defendants have not established the following facts: (a) the date on which Plaintiff's misconduct hearing took place; and (b) the date by which Plaintiff would have been required to file his initial grievance with the facility grievance coordinator, as well as any subsequent appeals.  (Doc. No. 90.)  Without these facts, or any evidence in support of these facts, the Court cannot compare the timeframe in which Plaintiff was required to file an initial grievance with the timeframes in which Plaintiff's fellow inmates, Rivera and Hitner, were allegedly confined to the RHU at SCI Smithfield.

Thus, for all of these reasons, the Court finds that Defendants have not met their burden in showing that they are entitled to summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies with respect to his Fourteenth Amendment procedural due process claim against Defendant Prichard. The Court will, therefore, deny Defendants' motion for summary judgment on this basis.

### D.    The Merits

Next, Defendants argue that, even if Plaintiff exhausted his administrative remedies under the PLRA, they are still entitled to summary judgment on his claims.  (Doc. No. 91 at 18-27.)  With respect to Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Prichard, Defendants argue,

among other things, that the sixty (60)-day period of confinement in disciplinary custody, which was the sanction Plaintiff received here, is not atypical of prison life and, thus, did not invoke the protections of the Due Process Clause. (Doc. No. 91 at 25-27.) The Court agrees.

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." See U.S. Const. amend. XIV. "'A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies.'" Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 437-38 (3d Cir. 2020) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). In order "[t]o establish [a state-created liberty interest under the Fourteenth Amendment] in the conditions of confinement context, courts generally require a showing that the alleged liberty interest is substantial[.]" See Porter, 974 F.3d at 438 (quoting Williams v. Secretary Pennsylvania Dep't of Corr., 848 F.3d 549, 559 (3d Cir. 2017) (some alterations in original). That is, "'the right alleged must confer 'freedom from restraint which . . . imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.'" See Porter, 974 F.3d at 438 (quoting Williams, 848 F.3d at 559) (alteration and emphasis in original)).

In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court held "that no liberty interest was implicated by an inmate's placement in solitary confinement for thirty days as discipline for disruptive behavior." See Williams, 848 F.3d at 559-60. This holding was based on the Supreme Court's conclusion that the disciplinary solitary confinement "did not present the type of atypical, significant deprivation in which a [s]tate might conceivably create a liberty interest." See Sandin, 515 U.S. at 486.

A decade later, in Wilkinson, the United States Supreme Court made "clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Id. at 223 (quoting Sandin, 515 U.S. at 484). Thus, in deciding whether a protected, state-created liberty interest exists under Sandin, courts must consider the following two (2) factors: "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." See Williams, 848 F.3d at 560 (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)); Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (stating that, "[i]n deciding whether a protected liberty interest exists under Sandin, [courts are to] consider the duration of the disciplinary confinement and

the conditions of that confinement in relation to other prison conditions" (citing

Shoats, 213 F.3d at 144)).

Here, the Court finds that Plaintiff has neither alleged nor shown that he was

subjected to an atypical and significant hardship in relation to the ordinary

incidents of prison life, such that he had a state-created liberty interest protected by

the Due Process Clause of the Fourteenth Amendment.  Although Plaintiff's

complaint alleges that he was placed in disciplinary custody for a total of sixty (60)

days (Doc. No. 1 ¶ 18), this duration of time, in itself, does not amount to an

atypical and significant hardship, as contemplated by the Supreme Court in Sandin.

See, e.g., Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (concluding that

seven months of disciplinary confinement "does not, on its own, violate a protected

liberty interest as defined in Sandin); Pena v. Clark, No. 21-2931, 2022 WL

897037, at *2 (3d Cir. Mar. 28, 2022) ("As for [prisoner-plaintiff's] due process

claim, we agree with the District Court that 210 days in disciplinary segregation,

by itself, does not amount to an 'atypical and significant' hardship that implicates

due process concerns." (quoting Sandin, 515 U.S. at 484-86)).  Additionally, the

Court finds that Plaintiff's complaint does not raise any allegations concerning the

conditions of his disciplinary custody.

Accordingly, for all of these reasons, the Court finds that Plaintiff's

confinement in disciplinary custody did not impose an atypical and significant

hardship, such that he had a state-created liberty interest protected by the Due

Process Clause of the Fourteenth Amendment.   The Court will, therefore, grant

Defendants' motion for summary judgment with respect to Plaintiff's Fourteenth

Amendment procedural due process claim against Defendant Prichard.

## IV.   CONCLUSION

In sum, Plaintiff's motion for summary judgment will be denied, and

Defendants' motion for summary judgment will be granted.   An appropriate Order

follows.

s/ Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge